UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.*,<br><br>   Plaintiff,<br><br>   v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*,<br><br>   Defendant. | 1:17-cv-00091-KBJ |

**DECLARATION OF ERIC NEUSCHAEFER**

I, Eric Neuschaefer, hereby declare, pursuant to 28 U.S.C. § 1746, the following to be true and correct:

1. I am the Chief of the Disclosure Branch, Records Management Division, Federal Emergency Management Agency ("FEMA"), United States Department of Homeland Security ("DHS"). I have held this position since January 9, 2017. In this capacity, I am responsible for the overall activities and operations of FEMA's compliance with the Federal Freedom of Information Act ("FOIA") and the Privacy Act of 1974, including document production on behalf of FEMA. Before that, I held the position of FOIA Program Analyst with the DHS Privacy Office as well as Acting Chief of the Disclosure Branch at FEMA. I have been with the Department since December 7, 2009.

2. I make this declaration based on my personal knowledge of FEMA's FOIA processing procedures and the circumstances surrounding FEMA's response to plaintiff Robert Benincasa's September 9, 2014 request. I have personally reviewed the documents at issue. The

purpose of this declaration is to provide information concerning FEMA's searches for documents, and FOIA exemptions claimed, while processing plaintiff Benincasa's request.

## THE FOIA REQUEST

3.      On September 9, 2014, FEMA received an email from Mr. Benincasa seeking "copies of electronic database tables containing the data in the possession and/or control of FEMA in association with property acquisitions under the Hazard Mitigation Grant Program or similar program(s)."[1]  Plaintiff Benincasa claimed FEMA released a dataset on FEMA's website that "lacks basic public information abut [sic] the property acquisitions, such as the address of the properties acquired, the seller's names, the amount paid for the property and the GIS coordinates of the properties."  He requested "complete data, which would include the above fields, and any other data fields present in the dataset, covering all activity of the program since its inception."  In addition, Mr. Benincasa requested "any documentation or meta-data associated with any and all data tables related to the dataset named above.  This documentation would include but not be limited to any coding manuals, record layouts, relational models and data dictionaries, including all references to any fields withheld by FEMA in response to this request."  A true and correct copy of the request is attached as Exhibit A.

## THE SEARCH AND PRODUCTION

4.      The FOIA requires agencies to perform a search that is reasonably calculated to uncover relevant documents.  Based on this requirement, the Disclosure Branch reviewed the

---

[1] FEMA's Hazard Mitigation Grant Program ("HMGP") provides grants to States and local governments to implement long-term hazard mitigation measures after a major disaster declaration.  Authorized under Section 404 of the Stafford Act and administered by FEMA, HMGP was created to reduce the loss of life and property due to natural disasters.  The program enables mitigation measures to be implemented during the immediate recovery from a disaster. For communities without FEMA-approved hazard mitigation plans, the program also provides funding to help develop plans.

request and directed FEMA's Federal Insurance and Mitigation Administration (FIMA) to search for responsive records. FIMA maintains the requested dataset, and therefore all relevant and potentially relevant records. A true and correct copy of the tasking document issued by the Disclosure Branch to FIMA is attached as Exhibit B. FIMA searched all locations likely to contain relevant documents responsive to Plaintiff's request. Based on its search, FIMA identified 66 pages of records responsive to Plaintiff's request. The records consisted of technical documents related to the National Emergency Management Information System (NEMIS), a database used to track disaster data for FEMA and grantees. Specifically, the technical documents related to the NEMIS Property Site Inventory, which FEMA uses to collect and store the data within the Hazard Mitigation Grant Program portion of NEMIS. The technical documents are the Supplementary Specification, Use Case Project Application, Instructions for Completing the Property Site Inventory Import Spreadsheet, and the Property Site Inventory Tables. These 66 pages of technical documents were released to Plaintiff in full on August 17, 2015. A true and correct copy of the final response letter is attached as Exhibit C.

5.      The requested dataset, without names, addresses, and geographic information systems (GIS) coordinates, is already publicly available on FEMA's website. Prior to issuing a final response to the FOIA request, FEMA ensured the dataset on the website was updated, and provided a link to it in the final response letter.

## JUSTIFICATIONS FOR WITHHOLDING

6.      Mr. Benincasa requested a dataset that includes "the address of the properties acquired, the seller's names, the amount paid for the property and the GIS coordinates of the properties." The names, addresses, and GIS coordinates in the requested dataset were withheld pursuant to 5 U.S.C. § 552(b)(6). The dollar amounts paid to the sellers were included in the

dataset that is available on the FEMA website. A true and correct copy of the dataset is attached as Exhibit D.

7. In responding to Mr. Benincasa's request, the Disclosure Branch invoked Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires a substantial privacy interest to be identified, and then a balancing of the public's right to disclosure against the individual's right to privacy. A substantial privacy interest is anything greater than a de minimis interest. The public's right to disclosure is the right to information that sheds light on how agencies perform their statutory duties. The Disclosure Branch invoked Exemption 6 because the names, addresses, and GIS coordinates do not shed additional light on how FEMA conducts property acquisitions under the HMGP, yet their release would likely subject these individuals to unwanted public scrutiny.

**Privacy Interest**

8. Those who sold their properties as part of the HMGP have a substantial privacy interest in keeping their names, the addresses of the properties they sold, and the GIS coordinates[2] of the properties out of the public realm, particularly when that information is combined with financial information associated with their sale. If this identifying information were released, the individuals would likely be targeted by journalists, blogs, watchdog groups, and/or similar entities conducting their own investigations. Once contacted, a seller would face invasive questions regarding whether he or she has ties to government officials involved in the HMGP, the

---

[2] A geographic information system (GIS) is a computerized information system that captures, stores, and displays data representing locations on Earth's surface. GIS coordinates contain latitude and longitude information up to six (6) decimal places that allows for the identification of property address, such as single family houses, sheds, and other residential structures.

circumstances around his or her decision to participate in the HMGP, and questions about the fair market value of their property, such as how he or she maintained his or her home. *See* Complaint ¶ 25 (listing topics of intended investigation). Each seller could then become associated with negative press related to the HMGP. Moreover, disclosure could incite jealousy amongst former neighbors who did not participate in the HMGP. In sum, the disclosure of the names of individuals who sold their properties to FEMA would only erode their legitimate privacy interest while not shedding light on how FEMA conducts property acquisitions under the HMGP.

### **Public Interest**

9. Releasing the names, addresses, and GIS coordinates will not shed additional light on how FEMA performs its statutory duties under the HMGP. It will reveal only who sold the properties and where the properties are located. Further investigation, including interviews of the HMGP participants and review of documentation maintained at the state level, would be necessary before reaching any conclusions about the topics identified by Plaintiffs. *See* Complaint ¶ 25. Plaintiffs' belief that information of public significance will be revealed from such investigations is purely speculative. In contrast, the public has a strong interest in FEMA's ability to withhold names, addresses, and GIS coordinates because individuals may decline to participate in the program if they know their identities may be publically disclosed, thus reducing the effectiveness of the HMGP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of April 2017.     _____

                                                                                                    ERIC NEUSCHAEFER